## SMITH V. JOHNSON.

1. Testimony of police records offered in an action for injuries suffered through negligence of defendant, to show that plaintiff led an "irregular" life and thereby to countervail medical testimony as to a condition of nervousness resulting from the accident, is inadmissible as involving a *non sequitur*. The major premise of the syllogism is faulty in assuming a relationship of cause and effect that may be true of a class or in the average, to be true of every individual in the class.

2. Testimony of police records as to arrests on criminal charges, offered to impeach the general character of a plaintiff in an action for negligence, is inadmissible to impeach credibility.

3. It is not error for the court to refuse to charge the jury on the subject of contributory negligence, where there is no proof of contributory negligence in the case. If such charge is given and the question is left to the jury, it is not an error prejudicial to the defendant, but in his favor.

HOSEA, J.

Heard on motion for a new trial.

The facts, in brief, as developed in the trial, were that defendant's wagon stood backed against the pavement curb at right angles therewith. The loading, as appears, was completed, and certain planks projected from and beyond the wagon bed wholly or partially across the pavement. Some barrels stood at the house line behind the wagon, which impeded the space for passage, if any existed, at the rear of the projecting boards. Plaintiff, coming along the pavement toward her home near by, seeing or supposing that there was no passage-way at the rear, started to go into the street to pass around the obstruction as others had done. At about that time the driver mounted the wagon, and started the horses quickly sidewise in such manner that the projecting lumber was swept with force laterally around across the pavement, so that it struck the plaintiff, knocked her down and injured her severely.

Plaintiff and her attending physician testified to her good

health prior to the accident, and to specific impairment of health resulting from the injuries received.

Objections based on what are claimed to have been erroneous rulings in the case by the trial judge are here considered in the order presented.

(1)   Plaintiff and her physician having testified that she was in good health before the accident, the attending physician who had also treated her for the injuries received, was asked on cross-examination whether "regularity or irregularity of life affected a patient's health," and he answered affirmatively.

Thereupon, defendant proposed to prove *by police officers* that plaintiff had led an "irregular" life, which testimony was excluded by the court.

Defendant admits that such testimony, if offered to impeach the character of plaintiff, would be properly excluded, but claims that the offer was "for the purpose of showing that the injury complained of, especially her extreme nervousness, was not due wholly, if at all, to the accident, but was the result of her mode of life."

It was competent for defendant to contradict the plaintiff's testimony as to her good health before the accident; but this means her *physical*, not her *moral* health. Under the elementary rule requiring the best kind of evidence suited to the fact to be shown, the proof must be direct and not indirect; that is, the evidence must relate to physical and not moral symptoms. What was proposed to be shown was a purely collateral fact of a wholly different class of facts assumed to possess such a relation of cause and effect with the fact to be shown, as that the primary fact might be conclusively presumed from the collateral fact. But the major premise of the syllogism is faulty in assuming that a relationship that might possibly be true of a class or in the average, is true of every individual in the class. History and common observation disprove the assumption. The method of reasoning upon which defendant sought to introduce the testimony has also been discredited by the Supreme Court. (See *Village of Shelby* v. *Claggett,* 46 O. S., 549 (555).

It may be worth while to note, also, that the "irregularity" of life which the physician (Dr. Erwin) understood counsel to ask about, and concerning which he answered, had reference solely to regularity of bodily habit—as to eating, sleeping, etc.—and not, as counsel erroneously assume, to dissolute, dissipated, or immoral habits, as clearly appears in the next succeeding question and answer to those here quoted from the brief. The omission to include this in the brief was doubtless an oversight, but, nevertheless, important; for the omitted testimony takes away the entire basis of fact for the argument.

It is often assumed that people with red hair have ungovernable tempers; but the assumed relation would hardly make proof that a man had red hair admissible for the purpose of contradicting evidence of a peaceable and quiet disposition.

(2) On cross-examination the plaintiff was asked the question, "How many times have you been arrested?" which was ruled out upon objection; and the dictum in *Coble* v. *The State,* 31 O. S., 102, is cited as authority to the contrary.

That case, however, was a criminal prosecution under Section 139 of the Criminal Code, providing that convictions may be shown to affect credibility, and is not in point in civil cases of this nature. The established rule as to attacking credibility in civil cases is by proving reputation for veracity; and proof must be restricted thereto, and not involve the entire moral character. *Perkins* v. *Mobley,* 4 O. S., 688.

Moreover, it is within the discretion of the trial court to allow or disallow cross-examination as to a witness' past record, and it should be excluded if unjust to witness or is not called for by the case. *Wrae* v. *State,* 20 O. S., 460 (471); *Hanaff* v. *State,* 37 O. S., 178 (180); *Bank* v. *Slemmons,* 34 St., 142 (147). Nor can questions be asked in cross-examination, as to collateral matters, for the purpose of contradiction. *Kent* v. *State,* 42 O. S., 426. And in a case of the nature of that at bar refusal to admit evi-

dence of moral lapses has been sustained by our court of last resort. *Shelby* v. *Claggett*, 46 O. S., 549.

The action of the court here is sustainable upon another ground, namely, that it is not permissible under guise of a cross-examination at any time to get in evidence not provable in defense. *Duval* v. *Davey*, 32 O. S., 604 (613).

(3) Refusal of third special charge that: "if plaintiff by her own testimony in support of her cause of action, raises a presumption of contributory negligence, the burden rests upon her to remove that presumption."

A review of the testimony in the case satisfies me beyond question that this charge was properly refused. There is nothing whatever in the plaintiff's testimony—or any other testimony in the case—that implies or raises even a suspicion of negligence on her part.

The theory urged by defendant throughout the case, and especially in argument, however, caused the court to lose sight of the first and better impression on this point, and to leave this question to be determined by the jury. It is admitted that this was a technical error; but, if so, it was in defendant's favor and not to his prejudice.

The theory of defendant is based on the assumption that plaintiff on approaching the wagon, and seeing the boards projecting over the sidewalk, was bound to anticipate the possibility (1) of the driver getting on his wagon; (2) of his starting his team with suddenness; and (3) of starting—not directly forward, or to the left, but—to the right, at such an angle with the pavement as that the wagon would swing upon the hind wheels as a pivot, and carry the projecting boards across the pavement like the projecting scythe of an ancient war chariot; and that, anticipating these possibilities, she was bound to govern herself accordingly and keep out of the way.

It is safe to say that "ordinary care" requires no such prescience. Although the question was submitted to the jury—a fact of which the defendant can not complain—yet it is clear from the record that, as a matter of law, the court should have taken the responsibility of deciding the point and so advising the jury. The jury decided it properly.

(4) The charge as to facts excusing contributory negligence, though unnecessary, is not to the prejudice of the defendant, if no contributory negligence existed. That it was the duty of the driver to look before starting his team must be conceded. The pavement is for pedestrians exclusively. He had no right to so load his wagon as to make it a dangerous agency to those passing rightfully on the pavement, and then, without taking any precaution against injuring others, start it in such manner as to swing the boards around in a manner that could not possibly be anticipated by any one on the pavement. The omission to look or to give warning, coupled with his sudden and rapid starting sidewise—thus giving the boards an added danger in the impetus of their swing—made his negligence so gross as to indicate entire indifference to the rights or safety of others.

The error in the charge was not prejudicial, and the motion for a new trial will be overruled.

*John C. Rogers,* for plaintiff.
*W. M. Tugman* and *R. B. Smith,* for defendant.